IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BOBBIE JOE MARTIN,**

**Plaintiff,**

**v.**

**UNUM LIFE INS. CO. OF AMERICA,
ET AL.,**

**Defendants.**                                              **No. 06-589-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. Introduction

On June 20, 2006, Plaintiff Bobbie Jo Martin filed a complaint for declaratory judgment against Defendants Unum Life Insurance Company of America and UnumProvident Corporation ("Defendants") in the Circuit Court of Madison County, Illinois. (Doc. 2-3.) Plaintiff seeks a judgment declaring that Carl Martin's death was accidental and that she is entitled to $46,000 in additional accidental death insurance benefits from Carl Martin's accidental death policy. On July 27, 2006, Defendants filed a timely notice of removal and removed this matter to this Court pursuant to **28 U.S.C. § 1331**. (Doc. 2.) This matter is now before the Court on Defendants' motion for summary judgment. (Doc. 13.) In addition, Plaintiff filed a motion to strike Defendants' reply in support of Defendants' motion for summary judgment. (Doc. 21.) As an initial matter, the Court denies Plaintiff's motion to

strike. (Doc. 21.)  Plaintiff's motion to strike posits that Defendants failed to file a timely reply pursuant to **SDIL-LR 7.1**.  While Plaintiff is correct that **Local Rule 7.1(c)** provides that a reply shall be filed within 10 days after service, Defendants are correct that **Local Rule 7.1** should be read in conjunction with **FEDERAL RULE OF CIVIL PROCEDURE 6(a) and (e)**.  Reading all of these rules together, the Court finds that Defendants correctly computed the reply deadline and filed their reply a day in advance of the deadline.  Therefore, Plaintiff's motion to strike is **DENIED**. (Doc. 21.)

## II. Background

The relevant facts in this case are as follows.  Plaintiff was married to Carl W. Martin ("Decedent").  Decedent was employed by Northen American Nutrition Company, Inc. ("Northern American").  Through Northern American, Decedent was enrolled in three different group insurance policies issued by Defendants: 1) a basic group life insurance policy; 2) a supplemental group life insurance policy; and 3) a group accidental death and dismemberment policy ("AD&D Policy").  Plaintiff is the named beneficiary under Decedent's plans.  The parties have stipulated that the plans are governed by ERISA.  **29 U.S.C. §1132(a)(1)(B)** provides an express cause of action for those seeking to recover benefits due under the plan.

### A. The Events

On the evening of July 5, 2003, Plaintiff and Decedent had been arguing and Plaintiff kicked Decedent out of the house.  Initially, Decedent yelled to try to get back into the house, but Plaintiff refused to let him in.  Around 12:30 a.m., a house

2

guest, Darci, went out to the backyard to give some water to the dog and heard Decedent moving around inside of his semi truck. At approximately 2:45 a.m., Darci and her fiancee Bill discovered Decedent with a piece of electrical cord around his neck. The cord was attached to a large bolt hanging from a corner wall of the garage in the backyard. When Decedent's body was discovered, his legs were crouched 10-12 inches and his feet were on the ground. There was 10-12 inches of slack in the cord around Decedent's neck.

On July 20, 2003, an autopsy was performed on Decedent. The autopsy found that Decedent had a blood-alcohol level of .105% on the night he died and that the immediate cause of death was hanging by the neck. On October 3, 2003, Paul Petty, the Pike County Coroner convened a jury in inquest. The jury found that the death was accidental and was due to asphyxiation as a result of hanging. The Death Certificate reflects this finding.

## B. Denial of Accidental Death and Dismemberment Policy Benefits

On January 28, 2004, Defendants denied Plaintiff's claim for AD&D benefits. Defendants found that 1) Decedent's death was not solely caused by external, violent, and accidental means that were independent of any other cause; and 2) the policy also excluded benefits for Decedent because his death was caused by, contributed to by, and/or resulted from self-inflicted injury. On February 15, 2004, Plaintiff appealed Defendants' denial of AD&D benefits. Plaintiff claimed that her husband had not intended to commit suicide and, therefore, she should be entitled to the AD&D benefits. On April 23, 2004, Defendants upheld their decision

denying the AD&D benefits. Defendants maintained that regardless of Decedent's intention, Decedent died as a result of a self-inflicted injury.

### III. Discussion

#### A. Summary Judgment Legal Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997)** (citing *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986)**). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997)** (citing *Celotex*, **477 U.S. at 323**). In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995) (Castillo, J.)**. The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, **138 F.3d 1201, 1205 (7th Cir. 1998)** (citing *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986)**).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings. Rather, she must show through specific evidence that an issue of fact remains on matters for which she bears the

4

burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd,* **51 F.3d 276** (citing ***Celotex*, 477 U.S. at 324**). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50** (citations omitted); *accord* ***Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996)**; ***Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**.

**B. Judicial Review of ERISA Claims**

The United States Supreme Court has held that judicial review of ERISA benefit eligibility determinations depends upon the level of discretion granted fiduciaries within the challenged plan. *See* ***Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110-15 (1989)**. The Seventh Circuit has found that ***Firestone*** presented a "smorgasbord of possibilities" for standards of review. ***Exbom v. Central States, Southeast & Southwest Areas Health & Welfare Fund*, 900 F.2d 1138, 1141-43 (7th Cir. 1990)**. In analyzing the various levels of review, the Seventh Circuit has held:

5

> When fiduciaries have the discretion to make "reasonable" interpretations of a plan, their decisions are reviewed according to the familiar abuse-of-discretion standard. A decision constitutes an abuse of discretion when it is "not just clearly incorrect but downright unreasonable." When fiduciaries are bound to interpret the plan under the broad standard of good faith, their discretion is even more extensive, and judicial review is even more deferential. Courts will then examine the exercise of this degree of discretion to determine whether it is arbitrary and capricious.

***Morton v. Smith*, 91 F.3d 867, 870 (7th Cir. 1996) (citations omitted)**.

In the present case, the AD&D Policy provides: "When making a benefit determination under this policy, Unum has discretionary authority to determine the Insured's eligibility for benefits and to interpret the terms and provisions of this policy." The plan clearly grants the administrator discretionary authority, although it appears to fall short of the most extensive allocations of discretion, which are limited only by "good faith." Accordingly, the Court will apply the abuse-of-discretion standard in reviewing the Defendants' determination to deny benefits and only overturn the Defendants' decision if it was "downright unreasonable."

### C. Analysis

The AD&D Policy provides benefits if the "insured" dies as a result of a covered injury "that is caused by external, violent and accidental means and is independent of any other cause." Plaintiff and Defendants argue over the meaning of "accidental" and whether Decedent accidentally died. Cases similar to the present case, cited by both sides, also focus on the precise definition of "accidental." ***See e.g., Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998)**

**(upholding MetLife's denial of AD&D benefits and its definition of "accident" as not downright unreasonable in finding that death resulting to drunk driving incident was not accidental because insured reasonably should have expected death to occur);** *Santaella v. Metropolitan Life Ins. Co.*, **123 F.3d 456, 464 (7th Cir. 1997) (reversing Met Life's denial of AD&D benefits finding that death resulting from overdose of prescription drugs was accidental because insured had expectation of survival and that expectation was objectively reasonable.)** These cases focus on 1) whether the insured believed that his conduct would result in the injury or death and 2) whether the insured's belief was reasonable.

But for our purposes, such an inquiry is unnecessary because the AD&D Policy also contains a provision that excludes losses caused by, contributed to by, or resulting from ***not only*** an <u>intentionally self-inflicted injury</u>, but also simply a <u>self-inflicted injury</u>. Although Plaintiff makes persuasive arguments analogizing this case to autoerotic asphyxiation cases, none of the policies in those cases contain an exclusion for simply self-inflicted injuries. This would be a very different case if the exclusion applied only to *intentionally* self-inflicted injuries, since there is good reason to believe that the Decedent did not intend to kill himself. But the Court has its hands tied, so to speak, by the provision in this policy that excludes all self-inflicted injuries. The Court simply cannot say that Decedent's death was not self-inflicted when the evidence shows that he put the electrical cord around his own neck, while heavily intoxicated, and somehow or another ended up hanging himself.

That being said, the Court is troubled by the inclusion of all self-inflicted injuries in the exclusion. There are few "accidents" that do not have some element of self-infliction, even if the result is totally unintended. Defendants seem to have crafted a provision that makes the policy nearly claim-proof. As a matter of policy, the Court finds such a provision rather distasteful, but feels bound to its terms by the law.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants motion for summary judgment. (Doc. 13.) The Court finds that Defendants Unum Life Insurance Company of American and UnumProvident Corporation are entitled to judgment in their favor. Clerk to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 31st day of March, 2008.

/s/ *David R Herndon*
    **Chief Judge**
      **United States District Court**